The defendant was tried before a jury and convicted of using a motor vehicle without the owner's permission in violation of General Statutes 53a-119b. He has appealed from the court's denial of his motions for a new trial, for arrest of judgment and for a judgment of acquittal.
The material facts may be summarized as follows: On May 29, 1980, officer Ronald Doughty of the Coventry police department applied for an arrest warrant charging the defendant with larceny in the second degree. In his affidavit supporting the warrant application Doughty alleged that a 1976 Datsun *Page 902 
automobile had been stolen during the early morning hours of May 24, 1980, and that information he received had led him to interview the defendant, who had several prior convictions for stealing automobiles. The officer also averred that he had received signed statements from two witnesses, Teri Brown and Colleen Frankland, which led him to state in his affidavit that "[b]oth women know David Durepo ... [and] that around 3 or 4 o'clock in the morning they saw David Durepo driving a small car...." This car was identified as a Datsun. The warrant application was presented on June 3, 1980, to Judge Graham, who found from the affidavit that probable cause existed for the issuance of a warrant for the arrest of the named accused, David J. Durepo. The defendant was arrested on June 11, 1980, and he was ultimately tried and convicted of using a motor vehicle without permission. The case is before us to review the defendant's claims of error concerning the denial of his three motions.
 I
The first claim concerns the sufficiency of the arrest warrant.[1] The defendant claims that the court erred by denying him a hearing on the sufficiency of the arrest warrant, as required by Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674,57 L.Ed.2d 667 (1978). In Franks, the United States Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement *Page 903 
is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."[2] Id., 155-56.
The defendant's claim that the police officer submitted an untrue warrant affidavit centers around the written statements that the officer relied upon in obtaining the personal knowledge necessary for his affidavit. The defendant argues that the statements of Brown and Frankland are discredited by their testimony at trial.[3] He concludes, therefore, that the testimony of these witnesses, whom the officer vouched for in his affidavit, seriously challenged the veracity of the representations made by the officer to the judge who issued the warrant. We do not agree.
The serious charge which the defendant makes here falls far short of the substantial preliminary showing of wrongdoing that Franks required. The defendant has presented no evidence of deliberate falsity or of reckless disregard for the truth, which is necessary to defeat the presumption of validity that attaches to a warrant affidavit. Franks v. Delaware, supra, 171.
The only claim of wrongdoing made concerns the propriety of the officer's assertion in his warrant affidavit that both witnesses "knew" the defendant. This assertion was supported, however, by the *Page 904 
witnesses' own written statements. Although both Brown and Frankland later attempted to disavow this portion of their respective statements when they testified at trial, the officer was entirely correct in relying on them when he prepared his affidavit in support of the warrant application.[4] Any discrepancy between the witnesses' testimony and written statements affects their own credibility, but this has no effect on the sufficiency of the arrest warrant since "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant...." Ibid. Accordingly, the court did not err by refusing to grant the requested hearing.
 II
The defendant's second claim is that the court erred by denying his motion in arrest of judgment, since under the facts here the court was "without jurisdiction of the offense charged." Practice Book 905. The defendant argues that, despite the absence of a full Franks hearing, the trial court had sufficient facts before it to find the warrant defective and, therefore, to hold that the arrest and subsequent conviction were void.
It appears that the defendant mistakenly brought the motion in arrest, since the argument he is making is properly raised by a motion for a new trial. Practice Book 902. Although both motions are substantially the same and their determination is controlled by similar principles; State v. Brockhaus, 72 Conn. 109, *Page 905 
111, 43 A. 850 (1899); there are two reasons why a motion for a new trial is the correct procedure here. First, the claim that the court erred by failing to find the warrant invalid and the arrest void is asserting a constitutional right to a new trial, which is governed by Practice Book 902(1). Second, errors concerning rulings of the trial court are not properly raised by a motion in arrest, but should be raised by an appeal from the judgment or a motion to set the verdict aside. State v. Orlando, 115 Conn. 672,674, 163 A. 256 (1932).[5]
Regardless of the procedure by which the defendant sought to make his claim, however, our conclusion that the court properly found the warrant affidavit sufficient is dispositive of the issue. None of the cases cited to us by the defendant requires a contrary result.
 III
The defendant's final claim is that the court erred in denying his motion for a judgment of acquittal in that the state failed to meet its burden of proof concerning the identity of the defendant. The issue presented is whether witnesses Brown and Frankland could identify the defendant in light of the underlying circumstances. The circumstances referred to by the defendant are that the witnesses did not know the defendant prior to the incident, and that they allegedly observed the defendant in a dark parking lot on a night when they had been at a party and consumed a large quantity of beer. *Page 906 
The appropriate test to determine whether the evidence presented is sufficient to sustain a verdict was stated in State v. Jackson, 176 Conn. 257,262, 407 A.2d 948 (1978), and has recently been restated by our Supreme Court in State v. Nerkowski, 184 Conn. 520, 524, 440 A.2d 195
(1981): "[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." State v. Jackson, supra. The issue in Nerkowski was whether the complaining witness could identify the defendant as the person who assaulted him, since the assault occurred during the confusion of a brawl in a dark barroom and the witness had only a fleeting acquaintance with the defendant prior to the incident. The Supreme Court held that the jury's verdict was supported by the evidence, namely, that the witness had observed the defendant in the same bar once or twice before, that he had spoken with the defendant briefly that night, and that he testified that while he lay on the floor after the assault, there was "no question" that it was the defendant who struck him.
The factual situation and ruling in Nerkowski are clearly relevant to the present case. Here, the identification was made by two disinterested witnesses. Each witness essentially testified that she observed the defendant at close range as he was driving a small car. Although the observation occurred in a driveway adjacent to a dark parking lot, there was sufficient illumination from a nearby porch light and street lights.
Brown testified that her attention was drawn to the defendant when he drove up at a fast speed with squealing tires, and that during the course of the evening she was introduced to the defendant by a mutual acquaintance and conversed with him for five *Page 907 
minutes. Frankland testified that her attention was drawn to the defendant when he drove up in a Datsun automobile with the tires spinning and burning, and that during the course of the evening the defendant had been pointed out to her. Both witnesses denied that they were intoxicated at the time of these observations. Any question that their faculties were impaired by the consumption of beer is further negated by the written statements that they gave three days after the incident.[6]
From this evidence, as well as from other circumstantial evidence, it was reasonable for the jury to conclude that the defendant was the operator of the vehicle in question. "In ruling on such a motion, the evidence presented at the trial court must be given a construction most favorable to sustaining the jury's verdict." State v. Nerkowski, supra, quoting State v. Jackson, supra.
 There is no error.
DALY, BIELUCH and COVELLO, Js., participated in this decision.