STATE OF CONNECTICUT *v.* BARBARA MIDDLETON
STATE OF CONNECTICUT *v.* BENJAMIN MIDDLETON
(7208)

BORDEN, SPALLONE and LAVERY, Js.

Argued October 17—decision released December 12, 1989

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Carolyn K. Longstreth* and *T. R. Paulding,* assistant state's attorneys, for the appellant (state).

*Robert L. Holzberg,* assistant public defender, for the appellee (defendant Barbara Middleton).

BORDEN, J. The state appeals, with the permission of the trial court, from the judgment dismissing the informations against the defendants upon finding no probable cause to arrest pursuant to Practice Book § 650.[1] The dispositive issue is whether the court erred in applying the exclusionary rule during a § 650 preliminary hearing. We find error.

---

[1] Practice Book § 650 provides: "If a defendant has been arrested without a warrant and has not been released from custody by the time of the arraignment or is not released at the arraignment pursuant to Sec. 658, the judicial authority shall, unless waived by the defendant, make an inde-

Certain facts are not in dispute. On June 13, 1988, at approximately 10:30 p.m., the Windsor police made a warrantless arrest of the defendants[2] at a Windsor motel for illegal possession of narcotics in violation of General Statutes § 21a-279 (a), possession of drug paraphernalia in a drug factory situation in violation of General Statutes § 21a-277 (c), use of drug paraphernalia in violation of General Statutes § 21a-267 (a), and possession of less than four ounces of marihuana in violation of General Statutes § 21a-279 (c). Neither defendant was able to post a surety bond of $1000.

The police report of Detective Frank Starnes, in the form of an affidavit, stated as follows. At about 10:30 p.m., on June 13, 1988, he received four separate citizen complaints from residents of the American Motor Lodge in Windsor, stating that the defendants were then freebasing cocaine in room number ninety-nine of the motel. The residents stated that this was a daily occurrence that had been continuing for some time, and they requested that the police do something about the situation. Starnes further stated in the affidavit that he and two other police officers went to the room and knocked on the door. A male voice responded, "Come in." Upon entering the room, Starnes saw the defendants and what he believed from his training and experience to be cocaine and marihuana. He placed the

pendent determination as to whether there is probable cause for believing that the offense charged has been committed by the defendant. Such determination shall be made in a nonadversary proceeding, which may be ex parte, at which affidavits or testimony under oath shall be received. If no such probable cause is found, the judicial authority shall discharge the defendant."

[2] In this appeal, only the defendant Barbara Middleton is represented by counsel and filed a brief as an appellee. The defendant Benjamin Middleton has taken no action to defend the appeal regarding the charges against him. We have considered the state's combined appeal regarding both defendants, however, because the records and issues in both cases are identical. We therefore refer to both defendants.

defendants under arrest and advised them of their constitutional rights. Both defendants waived their rights, and Barbara Middleton disclosed other drug paraphernalia located in the room. Starnes also stated that a white powder found in plastic bags in the room field-tested positive for cocaine, and that, upon later interrogation at the police station, Barbara Middleton admitted that she was freebasing cocaine that evening, that she had been doing so for about one year, and that Benjamin Middleton was using cocaine that evening as well. Starnes also stated that the items seized, including three plastic bags containing residue, a marihuana cigarette and various items commonly associated with illegal drug use, were sent to the state laboratory for further testing.

On June 14, 1988, the day after the arrest, the defendants were arraigned. At that time, a public defender was appointed to represent Barbara Middleton. A public defender was appointed to represent Benjamin Middleton for bail purposes only. See Practice Book § 633. Because the defendants had been arrested without a warrant and were in custody, the court conducted a § 650 hearing; see footnote 1, supra; to determine whether probable cause existed for the arrest. Upon examination of Starnes' report, the court expressed "concern about the legality of the entry" and the fact that the police officers "didn't identify themselves as police officers" before entering the room. The state then asked that the matter be passed in order to allow it to contact Starnes. After a recess, the state produced Starnes to testify because, as the state expressed it, "the court had concerns about the search that had taken place in this case . . . ." Starnes then testified in a manner consistent with his written report.

At the conclusion of Starnes' testimony, the state requested a finding of probable cause, and the defendants requested a finding of no probable cause because

there were no "grounds for the police to be in the apartment [sic] and what was seized was from an illegal search." The court found no probable cause, and discharged the defendants. The defendants then moved, "[b]ased on the Court's ruling . . . to dismiss the charges." The court dismissed the charges with prejudice.

The following colloquy then took place. "[Assistant State's Attorney]: For the record, the state takes exception to the court's rulings in this hearing today.

"The Court: Your exception is noted.

"The Clerk: What about the property?

"[Assistant State's Attorney]: It's all contraband. I would ask that based upon the proceedings, that the contraband be returned to the Windsor police department, seeing that the state may be contemplating an appeal of your rulings.

"The Court: You'll need the court's permission in order to take an appeal. There is no claim on behalf of the defendant to the property, is that correct?

"[Defense Attorney]: No claim.

"The Court: Unless the state indicates that it intends to appeal within one week, the inventory may be destroyed.

"[Assistant State's Attorney]: Thank you, I have a week to make the decision and basically, I'll confer with my superiors."

Three days later, on June 17, 1988, the state filed a written motion to appeal pursuant to General Statutes § 54-96,[3] and the court granted the motion. This

[3] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the

appeal followed. Subsequent to the filing of the appeal, the court, in response to the defendants' motion for articulation, further clarified the factfinding and reasoning underlying its refusal to find probable cause.

I

We first consider the defendants' jurisdictional argument that the state's appeal is not properly before us because the state failed to comply with § 54-96; see footnote 3, supra; by immediately either seeking permission to appeal or making clear its intention to do so.[4] We disagree.

The defendants rely on *State* v. *Carabetta,* 106 Conn. 114, 118–19, 137 A. 394 (1927), where the court held that the statutory predecessor to § 54-96 required the state to seek permission to appeal at the time of the judgment of acquittal. In that case, the judgment of acquittal was rendered on October 29, 1926, and the court's permission to appeal was granted on January 1, 1927, more than two months later. Id., 115. In *State* v. *Ross,* 189 Conn. 42, 46, 454 A.2d 266 (1983), the court expanded the *Carabetta* rule to permit the state to appeal as long as, at the time of the rendering of the judgment of acquittal, the state expressed its intention to appeal. See also *State* v. *Avcollie,* 174 Conn. 100, 109, 384 A.2d 315 (1977). The rationale given was that "[t]he evil perceived in granting a tardy request of the state to appeal was the injustice of dragging back into court a defendant who had reasonably assumed that

presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

[4] On May 25, 1989, we denied without opinion the defendant Barbara Middleton's motion to dismiss this appeal. In her brief and at oral argument in this court, she has renewed her motion to dismiss, based on the same grounds that she raised earlier. We now choose to address the renewed claim challenging our subject matter jurisdiction; *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 301–302 n.2, 521 A.2d 1017 (1987); in order to make explicit the reasoning behind our earlier denial of her motion.

his discharge meant that he was a free man no longer charged with a crime." *State* v. *Ross, supra.*

It is true, as the defendants argue, that, at the time of the judgment of dismissal, the state did not explicitly express an intention to appeal. We conclude, nonetheless, that the state sufficiently complied with § 54-96 and its rationale.

The state took a formal exception to the court's ruling. Furthermore, it asked that the seized contraband, rather than being destroyed, be returned to the Windsor police department because the state was contemplating an appeal. In addition, the court specifically ordered the contraband destroyed unless within one week the state indicated its intent to appeal. The state expressed its understanding that it had one week to decide whether to appeal, and the assistant state's attorney stated that he would confer with his superiors. Finally, only three days later, the court granted the state's motion for permission to appeal. Under these circumstances, the defendants were on adequate notice that the state had one week in which to seek permission to appeal. Thus, they had no basis reasonably to assume at the moment of the judgment that their discharge meant they were free persons no longer charged with crimes. *State* v. *Ross, supra.* Such an assumption could not reasonably be entertained until a week had passed. Within a week, permission to appeal was granted. We therefore turn to the merits of the state's appeal.

## II

The state first claims that the court erred in dismissing the informations because that dismissal flowed from its erroneous refusal to consider the evidence gathered by the police following their entry into the motel room. We agree.[5]

[5] This conclusion renders it unnecessary to consider the state's other arguments, namely, that the police entry was consensual, and that the proper

The court did not, either in its in-court ruling or in its subsequent articulation, state that it was suppressing the evidence obtained by the police from the motel room because the evidence had been unconstitutionally seized. It is quite plain, however, that the court did so and that the subsequent dismissal flowed directly from that suppression. At the conclusion of the evidence, the defendants requested a finding of no probable cause on the basis of a lack of "grounds for the police to be in the apartment and what was seized was from an illegal search." The court responded that, pursuant to Practice Book § 650, it could not find probable cause and discharged the defendants. The defendants then moved to dismiss the informations "[b]ased on the Court's ruling," and the court dismissed the informations. In its subsequent articulation, the court stated that it did not find probable cause "because the officers were not on the premises of room ninety-nine legally," and it cited as authority *Payton* v. *New York,* 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), *State* v. *Gallagher,* 191 Conn. 433, 437 n.4, 465 A.2d 323 (1983), and *State* v. *Pelletier,* 209 Conn. 564, 573–74, 552 A.2d 805 (1989). *Payton* and *Gallagher* involved suppression of evidence gathered after warrantless entries into homes, and *Pelletier* involved suppression of evidence gathered after a forcible entry into a home pursuant to a search warrant. We conclude that the court erred by considering, in the context of a hearing pursuant to Practice Book § 650, whether evidence was obtained as the result of an unreasonable search and seizure.

First, Practice Book § 650 contemplates that the probable cause determination "shall be made in a nonadversary proceeding, which may be ex parte, at which affidavits or testimony under oath may be

judicial remedy under Practice Book § 50 was limited to a discharge from custody and could not include a dismissal of the informations.

received." Such a proceeding, which ordinarily takes place upon arraignment, as it did in this case, is hardly consistent with the process of constitutional adjudication required in deciding a motion to suppress evidence. Practice Book §§ 809, 811, 812, 813, 821 and 822 provide detailed procedures for implementing that process.

Second, the purpose of Practice Book § 650 is to conform Connecticut's procedure with the mandate of *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), by providing an incarcerated defendant with a prompt postarrest judicial determination of probable cause. See 4 L. Orland, Connecticut Practice, Superior Court Criminal Rules § 650. Such a proceeding is not a critical stage requiring appointed counsel. *Gerstein* v. *Pugh*, supra, 122. A judicial determination of the legality of a search or seizure is not within the scope of what that preliminary stage of the proceeding is intended to accomplish.

Third, the purpose of the exclusionary rule is to deter illegal police conduct; see *State* v. *Brown*, 14 Conn. App. 605, 622, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); and the limits on its application that flow from that purpose, namely, that it does not apply where the cost of suppressing reliable tangible evidence outweighs its deterrent benefit; see *United States* v. *Leon*, 468 U.S. 897, 906–907, 104 S. Ct. 3405, 82 L. Ed. 2d 677, reh. denied, 468 U.S. 1250, 105 S. Ct. 52, 82 L. Ed. 2d 942 (1984); suggest its inapplicability to a hearing under Practice Book § 650. Since the interest in deterring illegal police conduct is sufficiently protected by excluding illegally seized evidence at trial, no such suppression is required at the detention hearing under § 650.

Finally, our Supreme Court has very recently noted "the general rule . . . that constitutional questions are not properly raised in a probable cause hearing

because such hearings are not adjudicatory in nature. See, e.g., Fed. R. Crim. Proc. 5.1, Notes of Advisory Committee on Rules; 2 W. LaFave & J. Israel [Criminal Procedure (1984) p. 263] § 14.4." *In re Ralph M.,* 211 Conn. 289, 313, 559 A.2d 179 (1989). In that case, the court held that the trial court should not entertain motions to suppress at nonadjudicatory juvenile transfer hearings pursuant to General Statutes § 46b-127 (i). The same reasoning applies to a nonadjudicatory § 650 preliminary hearing.

The defendants argue that the state waived its claims on appeal because it failed to object to the court's inquiry into the legality of the entry, and because it presented evidence on the matter by producing Starnes as a witness. We disagree. Although, as the defendants argue, the rule requiring appellate claims to have been made at trial applies to the state as well as to defendants; *State* v. *Hansen,* 8 Conn. App. 26, 28, 510 A.2d 465, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986); that rule was not violated here.

At the outset of the probable cause hearing, the court stated that it had "some concern about the legality of the entry." Thereafter, the state asked that the matter be passed in order to allow it to contact Starnes. This was consistent with the provision that the probable cause determination "shall be made in a nonadversary proceeding, which may be ex parte, at which affidavits or testimony under oath shall be received." Practice Book § 650. The only glimmer emanating from this record that the issue of search and seizure would be considered occurred after Starnes had arrived to testify. The assistant state's attorney stated that he was prepared to submit the sworn police report through Starnes, and that "[w]e passed the matter because the court had concerns about the search that had taken place in this case and I have Detective Starnes here to answer questions under oath." After Starnes' tes-

timony, the state specifically requested the court to find probable cause for the arrest. The defendant, in turn, requested a finding of no probable cause based on the claimed illegal entry and search. The court then found no probable cause. The state thereafter noted an exception to the court's rulings and indicated that it was contemplating an appeal.

This record is wholly insufficient to justify a conclusion that the state waived its appellate claims. The court did not alert the state that it was transforming the probable cause hearing under Practice Book § 650 into a suppression hearing. Indeed, it did not mention suppression either in its in-court ruling or its later articulation. Thus, the state had no reason to anticipate that transformation, and cannot now be said to have consented to it.

The defendants also argue that the trial court properly exercised its discretion in dismissing the informations pursuant to General Statutes § 54-56[6] because there was insufficient evidence to sustain the prosecution. This argument is without merit. As the defendants recognize in their brief, this argument rests on the premise that the court correctly suppressed the evidence in question. As we have already discussed, that premise is flawed.

There is error, the judgment of dismissal is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[6] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."