# STATE OF CONNECTICUT *v.* CLARENCE GLENN
## (SC 15928)

McDonald, C. J., and Borden, Norcott, Palmer and Callahan, Js.

Argued September 22—officially released December 7, 1999

*Theresa M. Dalton,* assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Eva Lenczewski,* senior assistant state's attorney, for the appellee (state).

*Opinion*

CALLAHAN, J. The sole issue in this appeal is whether article first, § 7, of the Connecticut constitution permits a criminal defendant to bring a subfacial challenge to a warrant based solely on the alleged lack of veracity of an informant's statements in an affidavit supporting an application for a search and seizure warrant. We conclude that it does not. The defendant, Clarence Glenn, was charged, by substitute information, with the crime of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (a).[1] Following the denial of his motion to suppress certain evidence

[1] General Statutes § 21a-278 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

that had been seized from his residence pursuant to a warrant, the defendant entered a conditional plea of nolo contendere. The trial court rendered a judgment of guilty thereon, and the defendant appealed to the Appellate Court, which affirmed his conviction. *State v. Glenn*, 47 Conn. App. 706, 707 A.2d 736 (1998).

The facts as stated in the Appellate Court's opinion are as follows. "In response to a warrant application filed by Waterbury police, a search warrant was issued for the defendant's residence, a second floor apartment at 44 Burton Street in Waterbury. In the affidavit supporting the warrant application, the affiants, two Waterbury police officers, alleged that they had probable cause to believe that there were narcotics at that location. A search warrant was issued by a judge of the Superior Court and executed by Waterbury police officers. During the search, the officers seized narcotics, money and drug paraphernalia. The officers arrested the defendant, who subsequently filed a motion to suppress the seized evidence, which motion included a request for a *Franks* [v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)] hearing. When the trial court denied that motion, the defendant entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a and Practice Book § 4003 [now § 61-6], to an information charging him with possession of narcotics with intent to sell in violation of . . . § 21a-278 (a)." *State v. Glenn*, supra, 47 Conn. App. 707.

In support of his motion to suppress in the trial court, the defendant maintained that he had an alibi for the day on which he allegedly had sold narcotics to an informant during a controlled buy. The informant, known to be reliable, reported his purchase of narcotics from the defendant to the affiants, who included that information in their affidavit supporting the search warrant application.

The defendant's motion, for purposes of this appeal, questions only the veracity of the informant. The defendant's motion to suppress was accompanied by two affidavits. In one, Joseph Gallop claimed that on the date in question he and the defendant were in Virginia. In the other, Gaynell Hunt, the defendant's sister, claimed that she, in Ohio, received two out-of-state collect calls from the defendant, one from Virginia on the date in question. With his motion the defendant also included two letters from Western Union indicating a money transfer from Hunt to someone with the defendant's driver's license in Virginia on the critical date. The defendant also provided a copy of Hunt's telephone records.

We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that, under article first, § 7 of the Connecticut constitution, in order for a defendant to secure a hearing regarding the veracity of an affidavit supporting a warrant, the defendant must make a showing of either intentional dishonesty or reckless disregard for the truth by an affiant, and that a showing that the informant gave materially false information is insufficient?" *State* v. *Glenn*, 244 Conn. 934, 717 A.2d 232 (1998).[2] This appeal followed.

The standard currently applied in Connecticut to challenges directed to affidavits supporting warrant applications is the federal standard of *Franks* v. *Delaware*, supra, 438 U.S. 154. "In *Franks* v. *Delaware*, supra, 171, the United States Supreme Court held that the truth of an affidavit supporting a search warrant may be challenged at an evidentiary hearing when a satisfactory preliminary showing of deliberate falsity

---

[2] The defendant had previously argued, in the Appellate Court, that the affiants themselves had included false statements in their affidavit knowingly or with reckless disregard for the truth. That contention is not part of this certified appeal.

or reckless disregard of the truth on the part of *the affiant* has been made. *State* v. *Morrill*, 197 Conn. 507, 543, 498 A.2d 76 (1985); *State* v. *Delmonaco*, [194 Conn. 331, 334–35, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984)]; *State* v. *Stepney*, 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Just*, 185 Conn. 339, 358, 441 A.2d 98 (1981); see *Rugendorf* v. *United States*, 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887 (1964). If at such a hearing the allegation of falsity [by the affiants] is established by a preponderance of the evidence, and the remaining content of the affidavit is not independently sufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as when probable cause is lacking on the face of the affidavit. *Franks* v. *Delaware*, supra, 171–72." (Emphasis added.) *State* v. *Telesca*, 199 Conn. 591, 604–605, 508 A.2d 1367 (1991).

Until today, we have not had occasion to consider directly whether our state constitution affords a criminal defendant greater latitude than the federal constitution in presenting a subfacial challenge to an informant's veracity in a warrant application.[3] After careful consideration, we are not persuaded that our constitution offers such sweeping protection.

"In order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the *textual approach*; see, e.g., *Stolberg* v. *Caldwell*, 175 Conn. 586, 597–98, 402 A.2d 763 (1978), appeal dismissed sub nom. *Stolberg* v. *Davidson*,

---

[3] We did not reach this identical issue in *State* v. *Delmonaco*, supra, 194 Conn. 336, because, having been raised for the first time on appeal, it was not properly before the court.

454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981) ('Unless there is some clear reason for not doing so, effect must be given to every part of and each word in the constitution.'); (2) *holdings and dicta of this court, and the Appellate Court*; see, e.g., *Doe* v. *Maher,* 40 Conn. Sup. 394, 448–49, 515 A.2d 134 (1986) (trial court used strict scrutiny to analyze sex discrimination claim based on the equal protection clause of the state constitution, relying, in part, on dicta from the Connecticut Supreme Court regarding what standard would be used once Connecticut's equal rights amendment was adopted); (3) *federal precedent*; see, e.g., *State* v. *Lamme,* 216 Conn. 172, 184, 579 A.2d 484 (1990) ('The adoption of federal constitutional precedents that appropriately illuminate open textured provisions in our own organic document in no way compromises our obligation independently to construe the provisions of our state constitution.'); (4) *sister state decisions* or sibling approach; see, e.g., *State* v. *Gethers,* 197 Conn. 369, 386–87, 497 A.2d 408 (1985); *Cologne* v. *Westfarms Associates,* [192 Conn. 48, 58–59, 469 A.2d 1201 (1984)]; (5) the *historical approach,* including the historical constitutional setting and the debates of the framers; see, e.g., *State* v. *Lamme,* supra, 178–80; *Cologne* v. *Westfarms Associates,* supra, 60–62; *Palka* v. *Walker,* 124 Conn. 121, 126, 198 A. 265 (1938); and (6) *economic/ sociological considerations.* See *State* v. *Barton,* [219 Conn. 529, 546, 594 A.2d 917 (1991)]; *State* v. *Dukes,* [209 Conn. 98, 115, 547 A.2d 10 (1988)]; see generally *State* v. *Jewett,* 146 Vt. 221, 500 A.2d 233 (1985); M. Margulies, 'Connecticut's Free Speech Clauses: A Framework and an Agenda,' 65 Conn. B.J. 437 (1991) (an analytical framework for state constitutional analysis in the context of the free speech clauses); E. Peters, 'State Constitutional Law: Federalism in the Common Law Tradition,' 84 Mich. L. Rev. 583 (1986) (book review)." (Emphasis in original.) *State* v. *Geisler,* 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

Article first, § 7, of our state constitution provides in relevant part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant . . . shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." We have often noted the textual similarity of article first, § 7, to the language of the fourth amendment to the federal constitution.[4] *State* v. *Miller*, 227 Conn. 363, 381, 630 A.2d 1315 (1993). Construing that similar language, the United States Supreme Court concluded in *Franks* that the fourth amendment permits a defendant to challenge only "[t]he deliberate falsity or reckless disregard . . . of *the affiant,* not of any nongovernmental informant." (Emphasis added.) *Franks* v. *Delaware*, supra, 438 U.S. 171. Moreover, it is significant that, prior to *Franks*, this court read the text of article first, § 7, to provide no subfacial challenges *at all.*

Neither does the history of article first, § 7, lend credence to the defendant's position. "[T]he sparse preconstitutional and early constitutional history of article first, § 7, would not support the conclusion that our state constitution mandated a stricter standard for the determination of probable cause than did the federal constitution." *State* v. *Barton*, supra, 219 Conn. 538 n.4; see also W. Horton, The Connecticut State Constitution: A Reference Guide (1993).

Prior to the United States Supreme Court's decision in *Franks*, Connecticut was one of eleven states that did not allow subfacial challenges of any kind to an

---

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

affidavit supporting a warrant. *Franks* v. *Delaware*, supra, 438 U.S. 179–80; *State* v. *Williams*, 169 Conn. 322, 363 A.2d 72 (1975); *State* v. *Anonymous (1973-6)*, 30 Conn. Sup. 211, 309 A.2d 135 (1973). In *Williams*, this court limited the inquiry to "the reasonableness of the magistrate's belief at the time he acts upon the information, not the ultimate truth or falsity of the information." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 328. The subsequent line of cases presenting subfacial challenges to warrants have limited their scope to the confines of *Franks*.[5] *State* v. *Dolphin*, 195 Conn. 444, 458, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Simmons*, 10 Conn. App. 561, 524 A.2d 669, cert. denied, 203 Conn. 811, 525 A.2d 524 (1987); *State* v. *Durepo*, 37 Conn. Sup. 901, 443 A.2d 493 (1982).

The majority of state and federal courts also limit subfacial challenges to the veracity of the affiant. *United States* v. *Procopio*, 88 F.3d 21 (1st Cir. 1996);

---

[5] We reject the defendant's contention that our decision in *State* v. *Marsala*, 216 Conn. 150, 579 A.2d 58 (1990), requires by logical necessity an extension of *Franks*. See E. Mascolo, "Controverting an Informant's Factual Basis for a Search Warrant: *Franks* v. *Delaware* Revisited and Rejected Under Connecticut Law," 15 Quinnipiac L. Rev. 65 (1995). Specifically, the defendant argues that our rejection of the good faith exception to the exclusionary rule in the *Marsala* context necessitates our rejection of the *Franks* rule, whereby only intentional or reckless misstatements *by the affiant* are open to challenge. This argument misapprehends *Marsala* and the purpose of the exclusionary rule.

In *Marsala*, we declined to follow *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and concluded that no good faith exception to the exclusionary rule exists under Connecticut law. Unlike the situation here, both *Marsala* and *Leon* presume a facially invalid search warrant. See *State* v. *Delmonaco*, supra, 194 Conn. 334 n.4. Both presume good faith on the part of the police. Crucially, however, both also presume that a magistrate improperly found probable cause and in so doing improperly placed the imprimatur of the state upon the warrant.

The defendant presents an entirely different set of circumstances. The challenged warrant is facially valid. The affiant-officers reasonably presented to a neutral magistrate facts that on their face constitute probable cause for the issuance of the warrant.

*United States* v. *McAllister*, 18 F.3d 1412 (7th Cir. 1994); *United States* v. *Perdomo*, 800 F.2d 916 (9th Cir. 1986); *Jensen* v. *State*, 482 A.2d 105 (Del. 1984); *State* v. *Peightal*, 122 Idaho 5, 830 P.2d 516 (1992); *State* v. *Mosley*, 412 So. 2d 527 (La. 1982); *State* v. *Hamel*, 634 A.2d 1272 (Me. 1993); *State* v. *Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980); *State* v. *Valenzuela*, 130 N.H. 175, 536 A.2d 1252 (1987), cert. denied, 485 U.S. 1008, 108 S. Ct. 1474, 99 L. Ed. 2d 703 (1988); *State* v. *Cervantes*, 92 N.M. 643, 593 P.2d 478, cert. denied, 92 N.M. 621, 593 P.2d 62 (1979); *People* v. *Bradley*, 181 App. Div. 2d 316, 586 N.Y.S.2d 119, appeal dismissed, 81 N.Y.2d 760, 610 N.E.2d 394, 594 N.Y.S.2d 721 (1992); *State* v. *Esplin*, 314 Or. 296, 839 P.2d 211 (1992) (en banc); *Commonwealth* v. *Bradshaw*, 290 Pa. Super. 162, 434 A.2d 181 (1981); *Taylor* v. *State*, 604 S.W.2d 175 (Tex. Crim. App. 1980); *Davis* v. *State*, 859 P.2d 89 (Wyo. 1993). To date, Colorado is the only jurisdiction that allows a subfacial challenge to the veracity of an informant in a warrant affidavit pursuant to its state constitution.[6] *People* v. *Nunez*, 658 P.2d 879 (Colo. 1983) (en banc); *People* v. *Dailey*, 639 P.2d 1068 (Colo. 1982) (en banc).

Furthermore, we can see little logic or benefit that would result from rejecting the traditional contours of the *Franks* rule under the Connecticut constitution. First, the deterrent effect of the exclusionary rule is not served by permitting a challenge based on an informant's false statements. "[T]he purpose of the exclusionary rule is to deter illegal police conduct; see *State*

---

[6] It appears that Montana may now also permit such challenges. *State* v. *Worrall*, 293 Mont. 439, 447, 976 P.2d 968 (1999). The defendant in *Worrall* claimed that the *affiant* had inaccurately described the informants' statements in his warrant affidavit. The court concluded, sua sponte and contrary to fifteen years of precedent; see id., 456 (Gray, J., concurring and dissenting); that a defendant need not show knowing, intentional or reckless disregard for the truth on the part of the *affiant*. Therefore, although *Worrall* did not present the precise issue raised here, it appears that Montana may now allow subfacial challenges to the veracity of an informant's statements in a warrant affidavit.

v. *Brown*, 14 Conn. App. 605, 622, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); and the limits on its application . . . flow from that purpose, namely, that it does not apply where the cost of suppressing reliable tangible evidence outweighs its deterrent benefit; see *United States* v. *Leon*, 468 U.S. 897, 906–907, 104 S. Ct. 3405, 82 L. Ed. 2d 677, reh. denied, 468 U.S. 1250, 105 S. Ct. 52, 82 L. Ed. 2d 942 (1984) . . . ." *State* v. *Middleton*, 20 Conn. App. 321, 329, 566 A.2d 1363 (1989). No deterrent effect exists where both the police and the magistrate perform their functions in reasonable reliance on the veracity of an informant's information in an affidavit.

Moreover, allowing a challenge to any possible subfacial falsehood in an affidavit flies in the face of probable cause as it is commonly understood. Probable cause is determined by objectively considering what is known to the state at the time a warrant is presented to a magistrate; it does not require the accuracy presented by hindsight. Inherent in the concept of probable cause is that the factual basis of a warrant may be inaccurate. The factual basis for probable cause should "be 'truthful' in the sense that the information put forth is to be believed or appropriately accepted by the affiant as true." *Franks* v. *Delaware*, supra, 438 U.S. 165. "[It] does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." Id.

This does not mean, however, that probable cause lacks substance. "Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is

being committed . . . . *State* v. *Velez*, 215 Conn. 667, 672, 577 A.2d 1043 (1990)." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 63, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 514 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

Insisting on complete factual truthfulness in a warrant negates probable cause and would result in a Catch-22 situation. The police would be required to conduct virtually a complete investigation and present the magistrate with a confirmed, absolutely true affidavit before a valid warrant could be issued, but such a complete investigation would be nearly impossible without a warrant. Our search and seizure clause recognizes both the legitimate need of law enforcement officials to conduct investigations and the privacy interest of individuals. As one leading commentator has noted, "the fourth amendment has been read not to proscribe 'inaccurate' searches, but rather only 'unreasonable' ones. And a warrant based on information which the affiant and the magistrate both had reasonable grounds for believing is a reasonable one. To require agents to 'know' facts that they cannot reasonably be expected to know would not deter any searches, since the agents must work with the reasonably believable evidence before them. Such a rule would also allow at least some defendants to escape otherwise certain conviction merely because the police cannot operate with perfect knowledge in every case." S. Kipperman, "Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence," 84 Harv. L. Rev. 825, 832–33 (1971). We find this reasoning to be equally applicable to article first, § 7, of our state constitution.

If the police could verify the absolute truth of everything in a warrant affidavit, there would be little need for a warrant in the first place or indeed for any further investigation. The concept of "probable cause" and reasonable searches and seizures cannot be understood

except as addressing this investigative dilemma. "[G]ood faith errors cannot be deterred . . . [and] do not negate probable cause. If an agent reasonably believes facts which on their face indicate that a crime has probably been committed, then even if mistaken, he has probable cause to believe that a crime has been committed." *United States* v. *Carmichael*, 489 F.2d 983, 988–89 (7th Cir. 1973) (en banc).

The court in *Franks* also expressed a concern for the increased pretrial litigation that might result from subfacial challenges to warrants. *Franks* v. *Delaware*, supra, 438 U.S. 170. This concern has been echoed in Connecticut. See *State* v. *Anonymous (1973-6)*, supra, 30 Conn. Sup. 230, citing *State* v. *Petillo*, 61 N.J. 165, 177, 293 A.2d 649 (1972), cert. denied, 410 U.S. 945, 93 S. Ct. 1393, 35 L. Ed. 2d 611 (1973). It makes little sense to increase the workload and delay in an already busy system by allowing challenges to errors that are beyond the state's control and that do not address the case's ultimate merits. See *State* v. *Anonymous (1973-6)*, supra, 230.

We conclude, therefore, that the federal standard for challenging a warrant affidavit set forth in *Franks* v. *Delaware*, supra, 438 U.S. 154, is the standard to be applied under article first, § 7, of our state constitution. Accordingly, the trial court properly denied the defendant's motion to suppress.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.